[S. F. No. 6606.   In Bank.—July 1, 1913.]

JOHN F. ATKINSON, Petitioner, v. STATE DEPARTMENT OF ENGINEERING, W. F. McCLURE, State Engineer, and U. S. WEBB, Attorney-General, Respondents.

STATE BUILDING ACT—STATE DEPARTMENT OF ENGINEERING—CONTRACT IN EXCESS OF ESTIMATED COST PROHIBITED—DEDUCTION FROM COST OF OMITTED WORK.—Under the act of 1909 commonly known as the State Building Act (Stats. 1909, p. 656), the department of engineering is prohibited from entering into a contract for the erection of any state structure—in this instance the erection of a group of buildings for the state normal school at Los Angeles—the cost of which exceeds in amount the estimates of cost approved by the advisory board of engineering; and if omissions of some of the work included in the plans and specifications may legally be made by the department of engineering from the contracts awarded, the estimated cost of the matters so omitted must be deducted from

the estimated cost of the entire work, and the remainder is the estimate of cost beyond which the department may not go in awarding contracts.

ID.—DIFFERENT SCHEMES OF PROPOSED WORK—NOTICE FOR BIDS.—Assuming that the department of engineering may submit different schemes of proposed improvement for bids at the same time and in one proceeding, the notice for bids, required by the statute, should show that such is the proposition.

ID.—NOTICE FOR BIDS RESTRICTED TO SINGLE SCHEME—INSUFFICIENT REFERENCE TO PLANS AND SPECIFICATIONS.—Where the plans and specifications on file showed it to be the intention of the department so to submit different schemes of the proposed improvement for bids, the notice for bids must show on its face, in general terms at least, what the scheme of the department is as to bids, and a notice which did not do this, but which in fact indicated a different scheme,—namely, a single definite plan for the proposed improvement, and a single bid for the whole, with bids for the separate parts of the whole designated by the statute, cannot be held sufficient because of a reference therein to the plans and specifications.

ID.—ALL PARTS OF WORK MUST BE ESTIMATED.—Under the statute, the department is required to make an estimate of cost for all parts of the proposed work, and if it omits to do so, it is not authorized to proceed in the matter of letting a contract for such work.

APPLICATION for a Writ of Mandate directed to the state department of engineering, the state engineer, and the attorney-general.

The facts are stated in the opinion of the court.

Oscar Lawler, for Petitioner.

U. S. Webb, Attorney-General, and John T. Nourse, Deputy Attorney-General, for Respondents.

THE COURT.—This is an application for a writ of mandate requiring respondents to execute and deliver to petitioner a contract alleged to have been awarded to him as contractor for the construction and erection of a group of buildings for the state normal school at Los Angeles. An alternative writ was issued.

An answer has been presented to the petition, and the matter was submitted for decision upon the pleadings, petitioner

claiming that no real controversy appears as to the facts material to a determination of the controversy.

Provision was made by statute under which the trustees of such state normal school were authorized to sell the present normal school site and devote the proceeds to the erection of a new school and the payment of all necessary expenses thereof. So far as the construction of such improvements is concerned, the act known as the State Building Act (Stats. 1909, p. 656) controls.

Substantially and so far as is material here this act provides as follows: The department of engineering has sole charge and control of "the erection, construction, alteration, repair or improvement of any state structure, building, road or other state improvement of any kind" except improvements on property under the jurisdiction of the board of state harbor commissioners, "the total cost of which will exceed the sum of one thousand dollars." Before entering into any contract for any such work, the department must prepare full, complete, and accurate plans and specifications and estimates of cost. These must be approved by the advisory board of such department, and the original draft filed permanently in the office of the department. The department, after such approval and filing, shall endeavor to let the work by contract to the lowest responsible bidder or bidders upon public notice. Notice of such work and inviting bids must be given by publication in a newspaper in the county where the work is to be done, for three consecutive weeks, and sent by mail to registered bidders. The notice "must state the time and place for the receiving and opening of sealed bids and must also state that bids will be received for the entire work, and also, where possible, for the performance of each of the following parts thereof, viz.: 1. For the masonry work, including all brick, stone, terra cotta, and concrete work, and all necessary excavations and filling; 2. For the iron work; 3. For the carpenter, electric and glazing work; 4. For the plastering work; 5. For the plumbing and gas fitting work; 6. For the heating work; 7. For the tinning, galvanized iron and slating work; and 8. For the painting and graining work." On the day named in the notice, the department shall publicly open the bids received, and shall award "such contract or contracts" to the lowest responsible bidder or bidders, provided that if

in the opinion of the department the acceptance of the lowest responsible bid or bids shall not be for the best interests of the state, it shall be lawful to reject all bids, and readvertise. No contract awarded shall be binding until submitted to the attorney-general, found by him to be in accordance with the provisions of the act, and certified by him accordingly. If, after the approval of the plans, specifications, and estimates of cost, the department shall be of the opinion that the acceptance of any bid or bids shall not be for the best interests of the state, or if after the rejection of all bids, the department shall be of the opinion that the acceptance of further bids will not be for the best interests of the state, it may direct such work to be done by day's labor, under its direction and control. "No contract or contracts shall be made exceeding in amount the estimates of costs approved by the advisory board of engineering," and no estimate of cost including expense of advertising and inspection shall be approved by said board requiring a greater expenditure of money than is appropriated for the specific purpose in the act authorizing the same.

Plans and specifications for all the work and estimates of cost for all for which any contract has been attempted to be awarded were prepared and approved as required by the act. Notice to bidders was given in the manner required by the act, such notice being as follows:

"State Normal School—Los Angeles

"Notice to Contractors.

"Sealed bids will be received by W. F. McClure, State Engineer, Capitol Building, Sacramento, California, up to and including 12 o'clock noon, Saturday, April 12, 1913, said bids then and there to be publicly opened and read, for a group of ten buildings for the State Normal School, Los Angeles, California, in accordance with plans and specifications therefor, copies of which may be obtained on application to the State Department of Engineering, Sacramento, California.

"First—For Entire Work.

"Second—For Mason Work, including all brick, stone, terra cotta and concrete work, and all necessary excavating and filling.

"Third—For Iron Work.

"Fourth—For Carpentering, Electric and Glazing Work.

"Fifth—For Plastering.

"Sixth—For Plumbing and Gas Fitting.

"Seventh—For Heating.

"Eighth—For Tinning, Galvanized Iron and Slating Work.

"Ninth—For Painting and Graining.

"A bond in the sum of ten per centum (10%) of the amount of the bid must accompany each bid.

"A deposit of twenty-five ($25.00) Dollars will be required on plans and specifications, the deposit to be returned immediately on the return of the plans and specifications to the State Department of Engineering at Sacramento, California, in good condition.

"The State Department of Engineering reserves the right to reject any and all bids and to waive any informality in any bid received.

"All bids must be addressed to W. F. McClure, State Engineer, Sacramento, California, and plainly marked on the envelope: 'Proposals for State Normal School Buildings, Los Angeles, California.'

"(Signed)  W. F. McCLURE,<br>"State Engineer."

The specifications contained a provision that "bids shall be submitted on forms supplied by the office of the state department of engineering, and all blanks for alternates shall be filled out in full as required," and that each bidder must state a specific sum for which he will do the whole work. The form of bid to be used was prescribed by the specifications. It first provided for a bid in precise accord with the published notice to bidders. Then followed the so-called "alternates," being designated from "A" to "N." These were simply fourteen propositions on the part of the bidder as to the various amounts to be deducted from the amount bid for the entire work, in the event that certain work is omitted. For instance, "A" was to the effect that if the front yard wall between fine arts and gymnasium buildings, including railing and steps, is omitted, there shall be deducted a certain sum, "J" was to the effect that if the fine arts building is omitted in its entirety, a certain sum shall be so deducted, and "F" was to the effect that if all chandeliers and light fixtures are omitted, a certain sum shall be deducted. So far as we can see, none of these so-called "alternates" included all of the work in any one of

the classes specified in the statute for which a separate bid might be called for, with the possible exception of ''G'' and ''H,'' ''G'' being the entire heating and ventilating system and ''H'' being the plumbing, gas fitting and sanitary sewering. It may be conceded that these do include the matters specified in the fifth and sixth specifications in the statute. But each of the other alternates included either only a part of the work and materials of one of such specified classes, or work or materials not included in any of such classes. We have stated some of these. Others are, all cement walks (B), all oil macadam drives on sheet No. 1 (C), programme clock and private telephone system (D), tinting, painting and decorating of all interior plastered wall and ceiling surfaces (E), tile rain water drainage system (I), manual arts building in its entirety (K), fountain or basin in front of administration building (L), and all cabinets, cases, tables, etc., as listed, etc. (N).

Petitioner put in a bid on this form, his bid for the entire work being $612,700. The blanks for ''alternates'' were filled out by him. The department, upon the opening of the bids, decided to omit altogether and not do at all any of the work specified in alternates B, C, D, E, F, J, and N, the aggregate of the amounts specified in his alternates for these being $73,034. It further accepted the bids of others for ''G'' and ''H,'' and omitted them from his contract, the aggregate amount specified in his alternates for these being $88,500. This made an aggregate to be deducted from his bid of $161,534. It awarded him the contract for the remainder of the work for $451,166, the difference between his bid for the entire work and the aggregate of omissions. It awarded contracts to others for the work specified in ''G'' and ''H,'' for the sum of $76,106, making an aggregate of contracts awarded of $527,272.

It is undisputed that the estimates of cost of all the proposed work, made and approved by the engineering department exclusive of architects' fees for plans, etc., and inspection, etc., amounted to $560,286. This did not include any of the matters specified in alternates B, C, D, F, and N, all of which were finally omitted and for no part of which has any contract been awarded. It did include ''J,'' the fine arts building, for which no contract has been awarded. Taking petitioner's

figures as to the amount of the estimate as to this, which is lower than the amount specified in the answer filed herein ($35,271), we have $33,592 to be deducted. Deducting this, we have as the estimate on the work included in the contracts awarded $526,694. The estimates also included "E," for tinting, painting and decorating of all interior plastered wall and ceiling surfaces, for none of which has any contract been awarded. The only evidence we have as to the estimate of the department on this is the amount specified in petitioner's alternate bid thereon, which is twelve thousand dollars. In view of the denials and allegations of the answer on the subject of excess of amount of contracts awarded over estimates of cost, it was incumbent on petitioner to show the fact in this regard, and we are warranted in concluding that such estimates amounted at least to twelve thousand dollars. Deducting this, we have as the estimates of the engineering department on the work included in the contracts awarded the sum of $514,694.

We thus have an excess in the aggregate amount for which contracts were awarded over the estimates of the engineering department of the cost of the work included therein of $12,578.

Taking petitioner's proposed contract alone: It is, as already stated, for $451,166. Omitting, as it does, the matters specified in E, G, H, and J, for which the estimates of cost aggregated, taking petitioner's figures on "J," $125,592 ("E" twelve thousand dollars, "G" and "H" eighty thousand dollars, and "J" $33,592), the amount of $125,592 must be deducted from the total estimate, $560,286, leaving $434,694 as the estimate of cost by the department for the work included in petitioner's proposed contract, an excess of cost over estimate of $16,472.

There is some confusion in view of the pleadings as to alternate "I," two thousand five hundred dollars. Petitioner claims that this work is included in the plumbing and gas fitting contract which was awarded to another. If this be so, a review of the figures will show that the price named in the proposed contract, $451,166, exceeds the amount bid by petitioner in the sum of two thousand five hundred dollars. There is also some question as to architects' fees. It is said that they were included in the estimates of cost by the department at $28,014, bringing such estimates up to $588,300, and that in

fact they will amount only to $26,363.60. Granting all that is claimed by petitioner in regard to both "I" and architects' fees, and deducting from such excess on all contracts $4,150.40, because thereof, we still have an excess of $8,427.60 of cost over estimates, in so far as all the contracts are concerned. Taking petitioner's contract alone into consideration, and deducting two thousand five hundred dollars on account of "I," for of course the architects' fees are immaterial here, we have an excess of contract awarded over estimate of $13,972.

It is suggested by petitioner in his closing brief that there was no estimate of cost as to the matters specified in "E," and that the same were not embraced in the total estimate of $560,286. Clearly, under the act an estimate of cost was required as to such matters, and if no estimate had been made in regard thereto, the department of engineering was not warranted in proceeding in the matter of letting a contract for the work. The answer of respondents did not, as we read it, allege any failure to make an estimate of cost as to this particular work, and there was no evidence to show that there was any such failure. Such answer does allege such a failure to make estimates of cost as to some other matters as to which we think estimates were required, such as cement walks and macadam drives. In fact, as we read the act, the estimates of cost as to all work and materials to be included in the contract should be made. It may be proper to observe that it is suggested that the engineering department had nothing to do with the preparation of the plans and specifications and estimates of cost for this work, such preliminary work having been done under the authorization of statute by the board of trustees of the Los Angeles State Normal School.

Under the circumstances just stated, we see no escape from the conclusion that the proposed contract of petitioner is prohibited by the provision of the act declaring that "no contract or contracts shall be made exceeding in amount the estimates of cost approved by the advisory board of engineering." It is obvious that if omissions of some of the work included in the plans and specifications may legally be made by the department of engineering from the contracts awarded as was done in this case, the estimated cost of the matters so omitted must be deducted from the estimated cost of the entire work, and

the remainder is the estimate of cost beyond which the department may not go in awarding contracts.

We are of the opinion that the published notice to bidders did not measure up to the requirements of the statute, in view of the scheme of alternate bids shown by the plans and specifications. It did not show that anything in the nature of alternate bids, upon the theory that certain omissions might subsequently be made, was called for. It expressly declared that bids would be received "for a group of *ten* buildings, . . . in accordance with plans and specifications therefor," and did not give the slightest intimation that any other bid was required (except bids for the parts of the work designated in the statute itself), or that bids would also be received for a group of only nine buildings, or that each bidder was in effect to put in more than one bid for the entire work, on the theory that specified portions of the work shown by the completed and approved plans and specifications might be omitted. In fact, the notice on its face negatived any such idea. Assuming for the purposes of the decision that the department of engineering may submit different schemes of proposed improvement for bids at the same time and in one proceeding, as was in effect done here, the notice should show that such is the proposition. Such we think is the plain requirement of the statute. It is no answer to the objection made to say that the plans and specifications on file showed such to be the intention of the department. The statute cannot be reasonably construed otherwise than as requiring the notice to show on its face, in general terms at least, what the scheme of the department is as to bids, and we would not be warranted in holding that a notice which did not do this, but which in fact indicated a different scheme,—namely, a single definite plan for the proposed improvement and a single bid for the whole, with bids for the parts of the whole designated by the statute, was sufficient, because of the reference which we have heretofore quoted to the plans and specifications on file.

A question is suggested as to the right of the department under the building act to submit to bidders alternative schemes for the doing of the proposed work. We are informed that it is exceedingly important that a decision should be given in this proceeding at the earliest possible moment, in order that the work of constructing the new normal school may not be de-

layed. As the question suggested will probably not be of any further practical importance in so far as this particular work is concerned, and as its determination cannot affect our decision herein in view of what we have already said, we deem it expedient to leave it undetermined herein, rather than to delay the decision herein for the purpose of further investigation and consideration of a question that cannot affect the result. We do not intend to intimate by this that such a plan may, or may not, be followed, provided proper notice be given.

The alternative writ of mandate heretofore issued is discharged and the proceeding dismissed.